THOMAS W. MCGREW, as Personal Representative of CLARA B. MCGREW and THOMAS F. MCGREW, Deceased, Plaintiff, *v.* MUTUAL LIFE INSURANCE COMPANY OF NEW YORK, Defendant.

Supreme Court, Westchester County, December 19, 1936.

*Alfred Feingold,* for the plaintiff.

*Frederick L. Allen,* for the defendant.

CLOSE, J.   This is an action to declare null and void a certain joint and survivor annuity contract issued by the defendant dated February 14, 1930, and delivered February 21, 1930, upon the joint lives of the plaintiff's intestates, Clara B. McGrew and Thomas F. McGrew.   The plaintiff claims that the contract was entered into by the defendant with a fraudulent intent and that it is unfair and unconscionable.   It is conceded that a single premium of $7,000 was paid.   The contract provided for the payment of $835.13 in semi-annual installments of $417.57 to be made on August 14, 1930, and semi-annually thereafter on August fourteenth and February fourteenth to the annuitants named, either to both annuitants or the survivor as the case might be.   The plaintiff also seeks an accounting and asks judgment for any balance of the premium paid after deducting payments to the annuitants.

It is the claim of the plaintiff that at the time the contract was entered into, the annuitants were aged, ill, weak, infirm and ailing. The annuitants, husband and wife, were aged and to some extent in ill health, but I am unable to find any support to the claim that deceit and fraud was practiced upon them or that they failed to fully understand the nature of the contract made.   The proof shows that they discussed investments with their pastor and obtained from him information about annuities.   The evidence establishes that Mr. McGrew wrote to the defendant asking about annuities. The agent who was sent to call upon them had never met them before.   He would gain nothing by selling them this particular contract as he would have received the same compensation if there had been a remainder over to the annuitants' children.   The various idiosyncrasies testified to fail to establish lack of mental capacity.   It is apparent that this aged couple did not want their children to know about the contract, but I am convinced that the son knew about it sometime prior to his mother's death.

There is no relation of trust and confidence involved here, hence *Barnes* v. *Waterman* (54 Misc. 392) and related cases are not in point.   Here the consideration for the contract was computed by the defendant's actuarial department based upon the expectancy of the annuitants as disclosed by standard mortality tables.   Such contracts, in the absence of fraud, should be sustained.   (*Rishel* v. *Pacific Mutual Life Ins. Co. of California,* [C. C. A.] 78 F. [2d] 881.)

Much stress was placed upon the fact that the defendant made no inquiry as to the state of the health of either annuitant. In the absence of fiduciary relationship, I am of the opinion that no duty rested upon the defendant to make such inquiry. The annuitants were seventy-nine and eighty years of age. They were up and about, going to church and traveling about the city when business or pleasure called them. It may be conceded that both the annuitants were suffering from arteriosclerosis and kidney trouble, but there is not sufficient evidence to show inability to understand the contract made and its effect upon their estate in so far as their children were concerned. Indeed, the evidence shows affirmatively that they both had sufficient mind and memory to comprehend the nature of the contract and to act with intelligent understanding.

There would be no profit in discussing the numerous cases cited by both plaintiff and defendant. Cases of this kind are individual and each depends upon its own facts.

Judgment for the defendant, without costs.